IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

YOLANDA GAIL WELCH,

*Movant/Defendant*.

Criminal Action No. ELH-13-0568
Civil Action No. ELH-15-262

**MEMORANDUM**

On January 3, 2014, Yolanda Gail Welch pled guilty to Conspiracy to Commit Bank fraud, in violation of 18 U.S.C. §1349.  *See* ECF 49; ECF 54 (Plea Agreement); ECF 55; *see also* ECF 157-1 at 1 (Plea Agreement).[1]  She was sentenced on April 21, 2014, to a below guidelines sentence of 33 months of incarceration.  ECF 95.  Judgment was entered on that date (ECF 96, ECF 97), and amended on April 24, 2014.  ECF 98; ECF 99, ECF 100.  No appeal was taken by Ms. Welch.  A Second Amended Judgment was entered on May 1, 2015 (ECF 149), upon defendant's request (*see* ECF 142; ECF 143), solely to provide, for the defendant's benefit, that "no restitution payments may be taken from or assessed against the defendant's Prison Inmate Account."  ECF 149 at 6; *see also* ECF 125; ECF 126; ECF 128; ECF 146.

On January 29, 2015, Ms. Welch filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF 129), supported by a Memorandum (ECF 129-1), alleging ineffective assistance of counsel and other grounds for relief ("Initial Petition").  The government was directed to respond.  ECF 130.  Ms. Welch filed an amended petition on May

---

[1] The docket contains multiple copies of the Plea Agreement, the rearraignment transcript, and the sentencing transcript.  For the convenience of the parties, I have sometimes provided duplicate citations.

19, 2015.  *See* ECF 155 ("Amended Petition).[2]  Unless otherwise noted, I will refer to both petitions collectively as the "Petition."

On May 29, 2015, the government filed an opposition to the petitions, with exhibits, claiming they fail on the merits.  *See* ECF 157 ("Opposition").  On June 24, 2015, Ms. Welch filed a reply.  *See* ECF 158 ("Reply").

The Petition has been fully briefed.  Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ."  *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).  No hearing is necessary to resolve most of petitioner's claims.  However, as to the claim that petitioner asked her lawyer to file a direct appeal, there is a dispute of fact, and the court cannot make credibility determinations on the basis of the parties' submissions.  *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970).  Indeed, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue."  *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

### Factual Background

On October 17, 2013, Welch and three codefendants[3] were indicted on charges of Conspiracy to Commit Bank Fraud, under 18 U.S.C. § 1349; Bank Fraud, in violation of 18

---

[2] On May 26, 2015, Ms. Welch filed a "Motion To Set Response Schedule," complaining about an extension afforded to the government to respond to the Initial Petition, and suggesting that "14 days is more than sufficient for the Government to prepare its response" to the Amended Petition.  ECF 156 at 2.  The Motion to Set Response Schedule will be denied, as moot.

[3] Welch was indicted along with codefendants Denise Wearing; Michelle Cole; and Chanell Cole.  ECF 157 at 2.  All defendants pleaded guilty.

U.S.C. § 1344; and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).  ECF 11.

As noted, Welch entered a plea of guilty on January 3, 2014, to Conspiracy to Commit Bank Fraud (Count One), in violation of 18 U.S.C. § 1349.  *See* ECF 49.  By statute, Count One carries a maximum sentence of 30 years' incarceration, a $1,000,000 fine, and five years of supervised release.  ECF 54 at 2.

The Plea Agreement contains a Statement of Facts in Attachment A.  ECF 54 at 9-11; ECF 157-1.  Welch agreed that she and her co-conspirators "devised, and conspired to devise, a scheme to defraud various financial institutions."  *Id.* at 9.  The plea agreement also included the following stipulation as part of the factual basis for the plea, ECF 54 at 10:

> The scheme involved stealing the personal identifying information ("P.I.I.") from medical providers and using the P.I.I. to fraudulently open credit accounts and assume control of existing credit accounts at Macy's, Bloomingdale's, and Nordstrom, and using those accounts to purchase merchandise in the names of unknowing victims without intending to pay for the goods.  The conspirators kept the goods, and sold the goods to others in exchange for cash.  Many of the items were returned to the retail stores for merchandise credit and for credit on the account of the conspirators.  Over the course of the scheme, the identities of over 100 and individual victims was used to obtain over $993,000.00 of merchandise from Macy's, Bloomingdales, and Nordstrom.

> ***

> [Codefendant] Wearing provided most of the [stolen] merchandise to Welch. Welch sold the merchandise to various individuals for approximately 50% of the retail value. Welch provided the cash to Wearing, who paid her a cash fee in return. Welch listed some of the merchandise using her eBay account[.]

> During the course of the scheme, Welch sold over $100,000 of fraudulently obtained merchandise. Throughout the scheme, Welch was aware that Wearing was fraudulently obtaining the merchandise by using the P.I.I. of unknowing victims, and Welch further knew that Wearing was obtaining some of the P.I.I. from her associates who worked for medical providers in Maryland.

Paragraph 16 of the Plea Agreement is titled "Waiver of Appeal."  In general, Welch waived her appellate rights.  ECF 54 at 6.  As noted, however, Welch complains that her lawyer did not file a direct appeal.

Sentencing was held on April 24, 2014.  ECF 95.  Welch's advisory sentencing guidelines called for imprisonment ranging from 51 to 63 months, based on an offense level of 24 and a criminal history category of I.  ECF 141 (sentencing transcript) at 6; ECF 157-3 (Sentencing Transcript) at 6.  In accordance with the Plea Agreement, the government recommended a variant sentence based on an offense level of 23, rather than 24.  *See* ECF 54 ¶ 10; ECF 157-3 at 8.  At an offense level of 23, with a criminal history category of I, the advisory sentencing guidelines called for a term of imprisonment ranging between 46 and 57 months.  As noted, I sentenced Welch to a term of incarceration of 33 months.  ECF 157-3 at 29.  I also ordered restitution of $993,772.43, in accordance with the Plea Agreement.  ECF 54 ¶ 12; ECF 157-3 at 30.   The codefendants are jointly and severally liable for the total amount, subject to the terms of each defendant's own plea agreement.  ECF 157-3 at 12.[4]

Ms. Welch has raised numerous claims for post-conviction relief, some of which are overlapping.  They include the following, as numbered by the Court:

> 1) defense counsel failed to file an appeal, as Ms. Welch requested.  ECF 129-2 at 4;

> 2) defense counsel "fail[ed] to have adequately reviewed the government's evidence at the time of plea discussions rendering [him] uninformed when he presented the plea offer to Ms. Welch," ECF 155 at 1-2; *see also* ECF 129 at 4; ECF 129-1 at 7;

> 3) defense counsel failed to raise "the issue of disparity among co-defendants regarding restitution."  ECF 155 at 3;

[4] *See*  note 5, *infra*.

4) the guilty plea was not "voluntary and intelligent" because Welch did not understand the consequences of her plea and the rights that she was waiving by pleading guilty, ECF 129-1 at 9-11, and "was not adequately informed of the nature of the government's case." ECF 129-1 at 9;

5) Welch did not understand the elements of the offense.  ECF 129-1 at 11;

6) defense counsel failed "to advise" Welch as to "the relevant law," including the law of conspiracy.  ECF 155 at 2; *see* ECF 129-1 at 11-12;

7) Welch "did not understand nor was informed that her lack of intent to commit a crime would provide a defense to the charges against her."  ECF 129-1 at 12;

8) defense counsel failed to explain that the government must "prove with a preponderance of the evidence both the loss amount and the number of victims," and failed to explain "the added number of victims enhancement," ECF 155 at 2;

9) defense counsel did not "accurately advise" Welch as to her "sentencing exposure based on the sentencing guidelines. . . .", and "presented a sentencing range that was lower than it really was."  *Id.*;

10) defense counsel "never advised her he could seek a downward departure because the loss amount substantially overstated the seriousness of [the] offense."  ECF 155 at 2;

11) defense counsel "promised that [Welch] would be released and receive a much lower sentence in exchange for a guilty plea" and other factors.  ECF 129-1 at 12;

12) defense counsel "pushed" Welch to plead guilty, ECF 129-1 at 7;

13) the government "failed to recommend the sentence at the low end of the guidelines," as it had agreed.  ECF 129 at 7;

14) defense counsel failed to disclose "his 'real close friendship'" with the prosecutor.  ECF 155 at 2;

15) defense counsel failed to request a continuance of sentencing although Ms. Welch "suffered a stroke the day before [sentencing] and left the hospital to attend the hearing against medical advice."  ECF 155 at 2 (emphasis in original);

16) the Court failed to explain why it rejected the sentencing guidelines and failed to take into account extenuating circumstances in her case. ECF 129-1 at 7.

Additional facts are included in the Discussion.

## Discussion

## I.

As noted, Welch filed an Initial Petition on January 29, 2015 (ECF 129; ECF 129-1) and an Amended Petition on May 19, 2015. ECF 155. The government's Opposition is at ECF 157.

A self-represented litigant, such as Welch, is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe [her] claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims by *pro se* litigants should be held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).

Welch did not include in her Amended Petition every claim that she had raised in her Initial Petition. It is not entirely clear whether issues raised in an initial § 2255 petition are subject to review if they are not reasserted in an amended petition. In *United States v. Ramey*, 217 F.3d 842, 2000 WL 790959 (4th Cir. 2000) (per curiam), the Fourth Circuit addressed a claim that was not realleged in an amended § 2255. It said, *id.* at *1 n.2 (emphasis added):

> In the amended motion, Ramey raised the restitution claim and re-raised the *Lopez* claim, but he did not re-raise his ineffective assistance claim. Ramey contends in this appeal, however, that **he did not intend to waive his ineffective assistance claim** by not including it in his amended section 2255 motion. **Assuming that Ramey did preserve his ineffective assistance claim**, we conclude that because he has failed to articulate any

specific acts of trial counsel that fell below an objective standard of reasonableness, his claim is without merit.

More recently, the Fourth Circuit affirmed the decision of a district court to consider only the arguments that were included in an amended § 2255 petition.  In *United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013), *cert. denied*, ____ U.S. ____, 135 S. Ct. 47 (2014), the Court described the district court's ruling, *id.* at 359:

> In February 2010, Dyess filed a request to file an "amended" § 2255 petition, raising 16 claims, most of which alleged ineffective assistance of counsel. Several of these claims were repeated from his earlier filings. The district court ruled that, "[g]iven Mr. Dyess' later submission" it was appropriate to consider only the claims in the amended petition.

The Fourth Circuit seemed to agree with the analysis of the district court, stating, *id.* at 360:

> We do not believe the district court erred in limiting its review to the 16 claims in the amended petition that were supported by facts and argument, particularly where many of the claims in the amended § 2255 motion were also raised in the original filing and the rest consisted only of vague and conclusory allegations.

Here, in the Initial Petition (ECF 129), Welch raised the claim that her lawyer failed to file an appeal despite her request.  *Id.* at 4.  She included her email correspondence with defense counsel to support her claim.  *See* ECF 129-2.  And, in her reply (ECF 158) to the government's response, Ms. Welch referred to emails that she attached to her Initial Petition.  She said, *id.* at 4: "Ms. Welch has emails that support her claim that she asked Defense Counsel to file an appeal on her behalf."  However, she did not include this claim in the Amended Petition.

Notably, the government responded to the contention raised in the Initial Petition. Because both parties have discussed the issue as to the appeal, it appears that both sides have assumed that issues in the Initial Petition were not abandoned, despite the filing of the Amended Petition.

For the reasons discussed above, it seems that Welch did not intend to abandon the contentions set forth in her Initial Petition. Therefore, as in *Ramey*, *supra*, 217 F.3d 842, I will assume that the claims contained in the Initial Petition have been preserved.

## II.

To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland*."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *Yarbrough v. Johnson*, 510 F.3d 327, 337 (4th Cir. 2008). *See generally Missouri v. Frye*, ____ U.S. _, 132 S. Ct. 1399 (2012); *Laffer v. Cooper*, ____ U.S. _, 132 S. Ct. 1376 (2012); *Padillo v. Kentucky*, 559 U.S. 356 (2010).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test, which relates to professional competence. In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrison v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish.  *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).  "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Branker,* 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).   Indeed, "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.   The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Id.* at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense."  *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.  *Id.*

As the *Padilla* Court said, 559 U.S. at 371, "Surmounting *Strickland's* high bar is never an easy task."  A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Strickland* at 697.   Nor must a court address both components if one is dispositive.   *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).   Failure to satisfy either prong is fatal to a petitioner's claim.   As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."   *Strickland*, 466 U.S. at 697.

### A.

Welch's time for filing a Notice of Appeal expired fourteen days after entry of the Judgment.   Fed. R. App. P. 4(b)(1)(A).   In this case, the Judgment was entered on April 21, 2014.   *See* ECF 96.   An Amended Judgment was entered on April 24, 2014 (*see* ECF 99), and therefore, the deadline for noting a direct appeal was May 8, 2014.[5]

Petitioner asserts that her counsel was ineffective for failing to file an appeal when she specifically asked him to do so.   ECF 129 at 4.   In support of her position, Ms. Welch attached an email that she sent to defense counsel on September 8, 2014, long after expiration of the initial appeal period, in which she wrote: "I WISH YOU WOULD HAVE FILED THAT APPEAL LIKE I HAD ASKED YOU TO DO…" ECF 129-2 at 3 (capitalization in original).   Welch did not produce any documentation that, during the initial appeal period, she asked defense counsel to file an appeal.

In its Opposition, the government asserts that Ms. Welch's appeal would have failed on the merits, because she had "knowingly and voluntarily" waived her right to appeal in the plea agreement.   ECF 157 at 9-10.   However, a waiver of appeal in a plea agreement does not relieve counsel of his duty to file an appeal on behalf of a client who asks counsel to do so in a timely manner.   ECF 129 at 4.   Indeed, the Supreme Court has said that it is *per se* ineffective assistance

---

[5] As noted, a Second Amended Judgment was entered on May 1, 2015 (ECF 149), addressing payment of restitution.

of counsel if an attorney does not file an appeal if unequivocally asked to do so. *Evitts v. Lucey*, 468 U.S. 386, 391-405 (1985). Similarly, in *United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007), the Fourth Circuit ruled that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement."

The government has not submitted any evidence to controvert Ms. Welch's assertion that she asked her lawyer to note an appeal within the time permitted. For example, no affidavit from defense counsel has been furnished. Welch's arguably self-serving email does not *prove* that she requested the filing of an appeal within the requisite time period. Nevertheless, even though the email correspondence is hardly conclusive, it is sufficient to raise a question of material fact as to whether Welch timely asked her defense attorney to file an appeal.

Moreover, in a case such as this one, I cannot make credibility determinations in the context of conflicting paper submissions. *See Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970) ("For the sake of prompt treatment of prisoner claims, we hope that many Section 2255 petitions will yield to disposition on the record, or on the record as expanded. There will remain, however, a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court."); *accord United States v. Robinson*, 238 F. App'x 954, 955 (4th Cir. 2007) ("[W]hen a movant presents a colorable Sixth Amendment claim showing disputed facts involving inconsistencies beyond the record, a hearing is mandated.") Based on the information before me, I cannot determine whether Ms. Welch requested an appeal within the requisite period.

In view of the foregoing, I must hold an evidentiary hearing to address the question of whether Ms. Welch timely asked her lawyer to file an appeal within the requisite statutory period.

**B.**

The Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). In *Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294–99 (4th Cir. 1992).

In *Hill*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper*, 845 F.2d 471, provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However,

his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

Welch entered into the Plea Agreement with the government, by which she pled guilty to one count of a multi-count indictment. In her Initial Petition, Welch asserted: "But for the counsel's errors, Ms. Welch . . . **may not have** pleaded guilty and would have on [sic] insisted on going to trial." ECF 129 at 5 (emphasis added). In the Amended Petition, Welch states: "Had [Welch] been properly advised, she would have realized her reduced culpability and lack of evidence regarding both loss and number of victims and rejected the government's plea offer **as it was written**. Demanding that the United States prove the loss amount and number of victims." ECF 155 at 7 (emphasis added).

In the Initial Petition, Ms. Welch was hardly unequivocal.  And, as to the Amended Petition, rejecting the plea agreement *as written* is not the same as rejecting a guilty plea altogether, in favor of a trial.  Furthermore, in her Amended Petition, Ms. Welch asserts that "there is a reasonable probability of a different outcome at sentencing, had counsel obtained the exculpatory evidence.  The 4 point victim enhancement would be dismissed and the loss amount lowered."  ECF 155 at 8.  These assertions suggest that what Ms. Welch sought was a different plea agreement, not a trial on all three counts of the indictment.

Under *Hooper*, Ms. Welch has not met her burden.  She has merely said that she might not have pleaded guilty.  At a minimum, Welch would only be eligible for relief if she claimed that, but for counsel's errors, she would have gone to trial.  *Hooper*, 845 F.2d at 475.

When determining whether the *Strickland* test is met in this context, the court may take into account the circumstances of the plea.  As the Fourth Circuit has noted, "[t]he voluntary and intelligent character of [a party's] plea bargain is further evidenced by the fact that the plea agreement was favorable to him and accepting it was a reasonable and prudent decision."  *Fields*, *supra*, 956 F.2d at 1299.  The *Fields* Court observed that the defendant's "punitive exposure, had he been convicted at trial," was far greater than the sentence imposed.  *Id.*

In this case, the guideline calculation reflected a deduction in the offense level of three points for acceptance of responsibility based on the guilty plea.  ECF 54, ¶ 7.  Moreover, the government agreed to a variant sentence at the low end of an offense level of 23, which was one level below the actual offense level of 24.  ECF 54 ¶ 10.  Welch's actual advisory sentencing guidelines range was 51-63 months of incarceration.  At an offense level of 23 and a criminal history category of I, however, the advisory guidelines range was reduced to 46-57 months of

incarceration.  And, if Welch had gone to trial and been convicted on all three charges, she faced a far greater sentence.  As noted, as to Count One alone, the statute provides for a sentence of up to 30 years' incarceration.  Her decision to plead guilty was a "reasonable and prudent" one. *Fields*, 956 F.2d at 1299.

For the reasons set forth above there is no merit to Ms. Welch's claim that, but for counsel's mistakes, she would have gone to trial.

## C.

Many of Welch's complaints pertain to a general contention that her guilty plea was not a voluntary and informed one.  ECF 129-1 at 9-11.  She asserts: "Even though in the plea colloquy [Ms. Welch] may have stated that she understood, but after being told by her attorney how to answer the Court, does not merely say that she understood the full process."  ECF 129-1 at 11.

Welch claims that she "was not adequately informed of the nature of the government's case and investigation.  She did not understand or appreciate the consequences of her guilty plea or understand the charges agianst [sic] her."  ECF 129-1 at 9.  Further, she asserts that her counsel failed to explain that the government "must prove with a preponderance of the evidence both the loss amount and the number of victims."  ECF 155 at 2.

At the outset of the guilty plea proceeding on January 3, 2014, Ms. Welch was sworn. ECF 157-2 at 2.  Moreover, the Court explained the significance of the oath.  *Id.* at 3-4.  And, Welch indicated that she understood.  *Id.* at 4.  The following colloquy is relevant, ECF 157-2 at 3-4 (emphasis added):

> THE COURT:    Also, let me make sure you understand that you **just took an oath to tell the truth.**  This does obligate you to answer my questions truthfully.  And if you were to fail to do that, it's possible that you would be subjecting yourself to further charges

for matters such as perjury or false statement. **Do you understand what I just said?**

DEFENDANT:        Yes.

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Court said that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  This rationale applies here, as I review the contentions.

Welch also confirmed under oath that she read and understood her Plea Agreement.  The following exchange at the Rule 11 hearing is pertinent, ECF 157-2 at 6-7:

THE COURT:      [H]ave you actually read this plea agreement, including Attachment A [i.e., the Statement of Facts]?"

DEFENDANT:      Yes.

THE COURT:      Did you understand what you were reading?

DEFENDANT:      Not quite, but I asked my lawyer.  So he explained it to me.

…

THE COURT:      And did he answer all of your questions?

DEFENDANT:      Yes.

THE COURT:      So have you had enough time to fully discuss the plea agreement with your lawyer?

DEFENDANT:      Yes.  Yes.

THE COURT:      Okay.  Any doubt about that?

DEFENDANT:      No.

| THE COURT: | Okay.  On the bottom of Page Seven, right above your signature, [the plea agreement] says: I have read this agreement… and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  Specifically, I have reviewed the factual and advisory guidelines stipulation with my attorney and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.  Is that a true and accurate statement? |
| --- | --- |
| DEFENDANT: | Yes. |

Under oath, Welch claimed that she did, in fact, understand her plea and its implications. As the government states, ECF 157 at 7-8, "this Court carefully reviewed all the consequences of the guilty plea with the defendant, including the government's burden and the nature of the charges ([ECF 157-2] at 8-9), the maximum penalties ([*id.*] at 9-10), the impact of the sentencing guidelines ([*id.*] at 11-12), and the rights she was giving up ([*id.*] at 21-29)."

At the conclusion of the plea colloquy, the following exchange ensued, ECF 157-2 at 35:

| THE COURT: | Do you still wish to plead guilty? |
| --- | --- |
| DEFENDANT: | Yes. |
| THE COURT: | Are you pleading guilty freely and voluntarily? |
| DEFENDANT: | Yes. |
| THE COURT: | Are you pleading guilty because you are guilty as charged? |
| DEFENDANT: | Yes. |

As I see it, Welch's claim that her plea of guilty was not knowing and voluntary is completely belied by the record.

As noted, Welch also complains that defense counsel did not properly review and investigate her case and, as a result, did not aggressively defend her.  ECF 155 at 2; ECF 129 at 4; ECF 129-1 at 7.  There is no indication of any facts to support this claim.  Moreover, Welch

expressly stated that she had no complaints about the legal services provided to her by her attorney. *Id.* at 5-6. The following exchange at the Rule 11 hearing is relevant, ECF 157-2 at 5-6:

| | |
|---|---|
| THE COURT: | Are you satisfied with the legal services that Mr. Van Hoven has provided to you? |
| DEFENDANT: | Yes. |
| THE COURT: | Is there anything you wanted Mr. Van Hoven to do for you that he failed to do? |
| DEFENDANT: | No. |
| THE COURT: | Is there anything that you didn't want him to do that he went ahead and did, anyway? |
| DEFENDANT: | No. |
| THE COURT: | Do you have any complaints at all about the legal services he has provided you? |
| DEFENDANT: | No, I don't. |

In addition, Welch complains that defense counsel "presented a sentencing range that was lower than it really was." ECF 155 at 2. However, at Welch's guilty plea hearing, the Court reviewed the advisory sentencing guidelines generally (ECF 157-2 at 10-12). At the rearraignment, the Court also asked Welch whether she had discussed the sentencing guidelines with her lawyer, "both in general and [as] he believes they apply [to Ms. Welch.]" ECF 157-2 at 11. She responded, "Yes." *Id.* The Court also reviewed the Plea Agreement, which set forth the anticipated offense level. ECF 157-1 at 4-5; ECF 157-2 at 12-14. At her plea colloquy, Ms. Welch confirmed that she understood her anticipated offense level of 24. ECF 157-2 at 14. The following exchange is pertinent, ECF 157-3 at 19:

| | |
|---|---|
| THE COURT: | And neither the United States Probation Office nor the Court nor anyone else, for that matter, can make a promise or prediction to you as to what the sentence will be in this case. Has anybody done so? |
| DEFENDANT: | No. |

Welch further contends that defense counsel failed to explain that her sentence exposure was increased under the sentencing guidelines because of the number of victims. ECF 155 at 2. However, this claim, too, is belied by the Plea Agreement and the plea colloquy. ECF 157-1 at 4; ECF 157-2 at 13. During the Rule 11 hearing, the Court specifically addressed the matter of the number of victims, ECF 157-2 at 13, consistent with the information in the plea agreement. *See* ECF 54 ¶ 6(c). The following exchange is relevant, ECF 157-2 at 13 (emphasis added):

| | |
|---|---|
| THE COURT: | And then, **because the offense involved 50 or more victims**, the offense level is increased yet again by 4 levels. And this would be under 2B1.1(b)(2)(B) of the guidelines. Is that accurate? |
| DEFENDANT: | Yes. |

In addition, Welch contends that defense counsel did not adequately explain to her the law of conspiracy. ECF 155 at 2. After the government's presentation of facts at the rearraignment, the Court asked Welch if she agreed with the government's summary of the facts. ECF 157-2 at 33. Welch expressed concern because her personal misconduct did not include theft of confidential information. ECF 157-2 at 33-34. The following exchange occurred, *id.* at 33-35:

| | |
|---|---|
| THE COURT: | Ms. Welch, is that an accurate summary of the facts the government would prove if the case went to trial? |
| DEFENDANT: | Yes. No. |

- 19 -

THE COURT:          What's not accurate about it?

MR. VAN HOVEN:   May we have a moment, Your Honor?

THE COURT:          Sure.

(Pause while the defendant confers with Mr. Van Hoven.)

MR. VAN HOVEN:   I can explain.  It has to do with, I think, the role.  Because I think that Ms. Welch may have mistakenly understood the government claiming that Ms. Welch was the one personally retrieving personal information.   And I explained to her that's not what the government had said nor is it what's in the statement of facts, that her role was in the selling of the merchandise and that the --

THE COURT:          That's what I think the government said.

MR. VAN HOVEN:   And she just wanted to be sure that the Court didn't think that she was the one who was taking that information.

THE COURT:          No.   But it is just to be clear to the defendant, it's a conspiracy charge. So various members of the conspiracy had different roles. But as a matter of law, if you're in the conspiracy together -- and if counsel disagrees with my explanation, I hope you'll correct me -- you're essentially responsible for the acts of your coconspirators. Anybody disagree with that?

MR. BUDLOW:        No, Your Honor.

MR. VAN HOVEN:   No, Your Honor.

THE COURT:          Do you understand?

DEFENDANT:         Yes.

THE COURT:          Okay.  So let me ask you this question.  Is that -- let me re-ask it.  Is that an accurate summary of what the government would prove if this case went to trial?

DEFENDANT:         Yes.

| | |
|---|---|
| THE COURT: | Did you, in fact, commit the crime as summarized by the government? |
| DEFENDANT: | Excuse me? |
| THE COURT: | Did you, in fact, commit the crime as summarized by the government? |
| DEFENDANT: | Yes. |

Welch further asserts that she "did not understand nor was informed that her lack of intent to commit a crime would provide a defense to the charges against her." ECF 129-1 at 12. In her Initial Petition, Ms. Welch points out that members of a conspiracy must "know[ ] of at least one of its objects and intend[ ] to help accomplish it." ECF 129-1 at 11. However, this quotation comes directly from Welch's plea agreement; she signed and stated under oath that she "became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it." ECF 157-1 at 2. Ms. Welch confirmed under oath, that she understood the elements of her offense. ECF 157-2 at 9. Therefore, any statements that undermine or contradict that statement do not provide grounds for relief.

In addition, Welch maintains that she was "pushed" to plead guilty by her counsel. ECF 129-1 at 7. However, at her Rule 11 hearing, Welch asserted that she was pleading guilty of her own free will. The following colloquy is relevant, ECF 157-2 at 28 (emphasis added):

| | |
|---|---|
| THE COURT: | Apart from what's in your plea agreement, has anybody made any promises or assurances to you in an effort to induce you to plead guilty? |
| DEFENDANT: | No. |
| THE COURT: | **Has anybody forced you, threatened you, or coerced you in any way in order to induce you to plead guilty?** |
| DEFENDANT: | **No.** |

THE COURT:        **Are you pleading guilty of your own free will?**

DEFENDANT:        **Yes.**

THE COURT:        Are you pleading guilty because you are guilty?

DEFENDANT:        Yes.

Welch contends that "the United States Attorney's office failed to recommend the sentence at the low end of the guidelines," as it had agreed to do.  ECF 129 at 7.  However, as the government points out in its Opposition, the record directly contradicts this assertion.  ECF 157 at 11.  Indeed, at sentencing, the government recommended a sentence based on the variant offense level of 23, adjusted down from the actual offense level of 24.  ECF 157-1 at 4-5; ECF 157-3 at 8.  As noted, an offense level of 23, with a criminal history category of I, yielded a guidelines sentencing range of 46-57 months of imprisonment.   The prosecutor said the defendant's sentence "should be sort of within or close to the calculated guideline" for offense level 23.  ECF 157-3 at 8, 10.  And, the prosecutor even advised the Court that the defendant's culpability was similar to that of a codefendant who had been sentenced to a period of incarceration of 36 months, *i.e.*, below the variant guidelines.  ECF 157-3 at 11.  Thus, this claim is without merit.

In addition, Welch complains that her counsel "never advised her he could seek a downward departure because the loss amount substantially overstated the seriousness of the offense." ECF 155 at 2.  She avers that she should be eligible for such an adjustment because of "the low level of culpability by Ms. Welch in the overall conspiracy." *Id.*  This argument, set forth in the Amended Petition, is a variation on a claim in the Initial Petition.  It lacks merit.

Through his presentencing memorandum (ECF 86), and at sentencing, defense counsel argued vigorously for leniency. ECF 157-3 at 12-23. The Court was well aware of Ms. Welch's role in the conspiracy, and took it into account. ECF 157-3 at 25-26. However, the Court explicitly noted the seriousness of the conduct, stating, *id.* at 25 (emphasis added):

> . . . This is a very serious offense.
>
> To be sure, there is no violence in this. . . . I know you're not a violent person. We're not worried in that sense of you going out and hurting someone physically. But the magnitude of the loss here is staggering. . . . *And while I know that personally you didn't steal the identities, you were someone who capitalized on that conduct.* … It was an integral part of the scheme. The scheme couldn't happen unless someone was in a position to steal the identities. … [U]ltimately, this is a very serious crime, and I have to take that into account.

Welch also complains that her lawyer was ineffective because of the disparity among codefendants as to restitution, ECF 155 at 3, and for failing to assure that all defendants were jointly and severally liable for restitution. ECF 155 at 2. Restitution was discussed at sentencing. ECF 157-3 at 11-12. The Court established that Welch's obligation was joint and several with her codefendants, but up to the amount of each defendant's liability.[6] Notably, the amount of restitution imposed on Welch was entirely consistent with the terms of her Plea Agreement. *See* ECF 54 ¶ 12. And, it was fully covered at the plea colloquy. ECF 157-2 at 15-17.

## D. Counts Not Addressed in Plea Colloquy

### 1. The court's imposition of sentence

---

[6] Chanell Cole is liable for restitution of $32,091.91. ECF 83. Michelle Cole is liable for restitution of $459,940.53. ECF 113. Like Welch, Wearing is liable for restitution of $993,772.43. ECF 120.

Ms. Welch complains that the court failed to explain why it rejected the sentencing guidelines. ECF 129 at 7. This assertion is puzzling. As the government points out, "the [court's] variance was *downward*, 18 months below the low end of the guidelines." ECF 157 at 12 (emphasis in original). The sentence was 13 months below the bottom of the variant guidelines. Welch clearly received a benefit from this Court's non-guidelines sentence.

The Court reduced the sentence because the Court thought Welch was remorseful, and also considered her responsibility for caring for her two children, as well as her role in the conspiracy. ECF 157-3 at 24-26. The Court also explained to Welch the considerations in sentencing, and its reasons for adjusting her sentence downward. ECF 157-3 at 24-29. Therefore, Welch does not have any basis to complain that the Court rejected the advisory sentencing guidelines, because the court's sentence was *below* the advisory guidelines.

### 2. Defense counsel's alleged friendship with the prosecutor

Welch contends that her lawyer was influenced by his friendship with the prosecutor. Her entire claim is little more than a bald assertion, unsupported by any facts. The government did not respond to the contention

In order to succeed in a claim on these grounds, plaintiff must prove "that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.' If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief." *United States v. Boynes*, 528 F. App'x 310, 311 (4th Cir. 2013) (summarizing *Cuyler v. Sullivan*, 446 U.S. 335, 336 (1980) ("The possibility of a conflict of interest is insufficient to impugn a criminal conviction. In order to establish a violation of the

Sixth Amendment, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance.")) (internal citations omitted).

There is no basis to indicate the existence of any friendship between opposing counsel, much less one that interfered with justice.  *See Boynes*, 528 F. App'x at 311 (granting an evidentiary hearing when defendant "was informed by [his counsel], 'at the end of the hearing . . .,' that [his counsel] 'could not pursue the issue to the district court because of his friendship and close relationship with [opposing counsel].'") (internal citations omitted).  Lawyers in a community like Baltimore often know their legal adversaries and conduct themselves professionally.  Ms. Welch is grasping at straws.

### 3. Failure to Request a Continuance for Medical Reasons

Welch maintains that her lawyer was ineffective for failing to request a continuance of her sentencing when she "suffered a stroke the day before [sentencing] and left the hospital to attend the hearing against medical advice."  *Id.* (emphasis in original).  The government did not address this issue in its Opposition.  *See* 157.

At the outset of sentencing, as is my practice, I asked counsel whether Welch was fit to proceed (ECF 157-3 at 2):

> THE COURT:  Mr. Van Hoven, before we get started, can you just tell me, is your client ready, both physically and mentally, is she able to proceed to sentencing today?
>
> MR. VAN HOVEN:   Yes, Your Honor.[7]

---

[7] The courtroom was filled with defendant's family members.  ECF 157-3 at 2.  Perhaps Welch wanted to proceed in order to avoid inconvenience to her supporters.

Moreover, Welch read a very articulate letter she prepared as part of her allocution. ECF 157-3 at 23-24. There was no indication that her ability to proceed was affected by a health issue.

Welch does not provide any proof of a stroke. Instead, she has provided an undated set of discharge instructions. ECF 155 at 11. The undated papers reflect a diagnosis of "TIA," which is presumably an abbreviation for Transient Ischemic Attack. According to the Mayo Clinic, "[a] transient ischemic attack (TIA) is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage. Often called a ministroke, a transient ischemic attack may be a warning. About 1 in 3 people who have a transient ischemic attack eventually has a stroke, with about half occurring within a year after the transient ischemic attack." Mayo Clinical Staff, *Definition of transient ischemic attack (TIA)*, THE MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/basics/definition/con-20021291 (last visited July 23, 2015) (quoted in *Feldman v. Law Enforcement Associates Corp.*, 955 F. Supp. 2d 528, 538 (E.D.N.C. 2013) aff'd, 752 F.3d 339 (4th Cir. 2014)).

There is no indication that defense counsel knew of Welch's health condition, or that her lawyer advised her that she could not seek a postponement. The claim is without merit.

### Conclusion

For the foregoing reasons, I will hold an evidentiary hearing to determine whether defendant timely asked her lawyer to file an appeal. The Petition is otherwise DENIED. I will appoint counsel for Ms. Welch as to the limited issue that remains.

A separate Order follows, consistent with this Memorandum.


Date: August 14, 2015                        _____/s/_____

                                             Ellen Lipton Hollander
                                             United States District Judge